IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLA RENEE TODARO, )
)
        Plaintiff, )
)
  vs. ) Civil Action No.  14-744
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
        Defendant. )
)

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 10 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 11 and 13). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Defendant's Motion for Summary Judgment (Docket No. 12) and granting Plaintiff's Motion for Summary Judgment (Docket No. 10) to the extent that the case is remanded to the Commissioner for further proceedings consistent with the Opinion that follows.

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about June 16, 2011, Plaintiff applied for DIB and SSI. In both applications, she alleged that since May 1, 2009, she had been disabled due to major depressive

1

disorder, anxiety disorder, migraine headaches, post-operative left foot complications, and a possible blood-clotting disorder. (R. 187-96, 227). Her last date insured was December 31, 2014. (R. 12). The state agency denied her claims initially, and she requested an administrative hearing. (R. 110-120). Administrative Law Judge ("ALJ") Charles Pankow held a hearing on August 15, 2012, at which Plaintiff was represented by counsel. (R. 30-62). Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 58-62). In a decision dated October 17, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 12-23). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on April 10, 2014, the Appeals Council denied Plaintiff's request for review. (R. 1-3). Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 10 and 12). The issues are now ripe for my review.

## II.    LEGAL ANALYSIS

### A.    STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of

fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision

with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. **WHETHER THE ALJ ERRED BY FAILING TO EVALUATE THE EFFECTS OF PLAINTIFF'S MIGRAINE HEADACHES ON HER ABILITY TO WORK ON A REGULAR AND CONTINUING BASIS.**

The ALJ found that Plaintiff had severe impairments, including low back pain, foot pain, headaches, major depressive disorder, generalized anxiety disorder, and personality disorder. (R. 14). He further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except she was limited to occasional performance of postural maneuvers, such as balancing, kneeling, climbing, crouching, stooping, and crawling. In addition, Plaintiff was limited to unskilled work performed in a low stress environment, defined as few changes in work settings and no fast pace or quota production standards, and she was limited to occasional contact with the public, coworkers, and supervisors. Id. at 18.

Plaintiff argues that this RFC finding is deficient because, despite finding her headaches to be a severe impairment, the ALJ failed to include any migraine headache related limitations in the RFC finding, and/or otherwise discuss in his opinion any evidence regarding the effects of her migraine headaches on her ability to work. See Pl.'s Br. [ECF No. 11] at 3-7. After careful review of the record, including the documentary evidence, the ALJ's opinion, and the hearing testimony, I agree that remand is necessary on this issue.

An ALJ must base his RFC assessment on all of the relevant evidence of record. 20 C.F.R. §§ 404.1545(a), 416.945(a). In his opinion, the ALJ must provide sufficient explanation of his final determination to provide the reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). That is, the ALJ's decision must allow the court to determine whether any rejection of potentially

4

pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008); see also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (the ALJ's decision should allow the reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored").

Here, the ALJ found Plaintiff's headaches to be a severe impairment, and noted some of Plaintiff's headache-related complaints. (R. 14, 19-21). For example, the ALJ cited Plaintiff's testimony that she experiences migraines, with sensitivity to light and sound. Id. at 19. He also acknowledged, with respect to Plaintiff's impairments in combination, Plaintiff's testimony that her symptoms vary in degree, but are continual in nature, and that they prevent her from performing routine daily activities; limit her ability to lift, squat, stand, walk, kneel, climb stairs, see and complete tasks; and cause memory and concentration problems and difficulty understanding and following instructions. Id. The ALJ further declined to give full weight to a Physical Residual Functional Capacity Assessment prepared in August 2011 by non-examining physician James Caramanna, because, in part, the report did not clearly account for Plaintiff's subjective complaints concerning limitations caused by her migraines. See id. at 20-21 (discussing Exs. 8A, 9A ).[1]

Despite acknowledging that Plaintiff complained of headache-related symptoms and limitations, the ALJ failed to specify which, if any, of those limitations he incorporated in his RFC finding, and failed to discuss in any meaningful way the record evidence relating to Plaintiff's headache complaints. This evidence includes numerous medical records documenting Plaintiff's complaints of, and regular treatment for, headache pain, including records from Plaintiff's treating neurologists in Georgia and Pennsylvania dating from 2007 to May, 2012.

---

[1] The ALJ did not specify the exact headache-related limitations to which he was referring.

See, e.g., R. 335-367 (Ex. 4F); 432-33 (Ex. 7F); 693-698 (Ex. 14F); 839-851 (Ex. 24F).[2] These records also reflect the prescription of a variety of different medications to combat Plaintiff's headache symptoms, with varying effects. See id.[3] Additionally, the record indicates that Plaintiff sought emergency room treatment for her migraines on at least nine occasions during this period. See id.; see also R. 372-375, 385-388, 404-407 (Ex. 5F); 420-425 (Ex. 6F); 507-510, 553-557, 677-682, 686-689 (Ex. 13F). As the Social Security Administration recognizes,

---

[2] The neurologists' treatment notes consistently chronicle Plaintiff's headache complaints. For example, on December 29, 2008, Plaintiff reported experiencing about five migraines a month, and her doctor diagnosed "[c]ontinuing intractable migraines with multiple ER visits." (R. 349). On December 4, 2009, Plaintiff reported that her headaches had been doing "quite well" for several months until October 2009, then started becoming more frequent again. (R. 348). The doctor indicated "[f]requent migraines" and difficulty with treatment failures. Id. On May 26, 2010, Plaintiff complained that she could only tolerate a 25mg dose of nortriptyline and that was not really effective for her headaches. (R. 347). On August 9, 2010, Plaintiff told her doctor that she had seen another neurologist for a second opinion who advised her to discontinue Topamax due to side effects. She also noted that she was making ER visits at least weekly and running out of pain medications due to frequent dosing. (R. 345-46). On August 27, 2010, after moving to Pennsylvania from Georgia, Plaintiff told her Pennsylvania neurologist that she had suffered from increasingly severe headaches over the past three years. She described an infrequent aura manifest by vague visual impairment, leading to persistent pain. She reported only modest relief of pain following treatment with Percocet and/or Maxalt. She also reported two ER visits on the previous day (August 26, 2010) for persistent refractory pain. (R. 696-97). On October 22, 2010, Plaintiff told her doctor she had seen a neurologist at UPMC who suggested she come off Depakote and go on Inderal. She also reported two migraines per week and tension headaches about two times per week. (R. 432-33, 695). On April 7, 2011, Plaintiff reported experiencing variable periods of severe headaches compounded by affective decompensation ultimately leading to psychiatric inpatient care from 3/23/11 to 3/30/11 for depression and suicidality." She described occasional migraine headaches at present. (R. 694). On June 7, 2011, Plaintiff continued to report episodes of severe migraines averaging about four per week, and indicated she had to go to the ER on June 6, 2011 to receive pain medications. She indicated she still had the same headache, which had lasted ten days, although it was milder that day. (R. 693). On August 3, 2011, Plaintiff was evaluated at a pain clinic, and reported experiencing about eight migraines per month. (R. 815-819). On October 4, 2011, Plaintiff reported "an increase in frequency but a decrease in severity" of her headaches "of late." She also noted at least two ER visits over the past several months for acute intervention. (R. 848). On November 28, 2011, Plaintiff reported no severe headache problems and relief with Imitrex or Maxalt. (R. 840). On March 28, 2012, Plaintiff reported that her headaches were less severe, but that she still averaged about three migraines per week. (R. 839-40).

[3] Plaintiff's medications included: Imitrex, Maxalt, Medrol Dosepak, Protonix, Inderal, Elavil, Phenergan, Opana, Percocet, Vicodin, Verapamil, Nortriptyline, Depakote, Midrin, Topamax, Triptopan, Zonegran, Magnesium, Ultram, and Frova. See R. 335-367 (Ex. 4F); 432-33 (Ex. 7F); 693-698 (Ex. 14F); 815-819 (Ex. 20F); 839-851 (Ex. 24F); see also R. 277 (Ex. 8E), R. 43-45, 50-57 (Testimony). The ALJ indicated that there was no evidence from any medical source of record that Plaintiff's medications were frequently changed or the dosages altered due to side effects. (R. 19). The medical records just cited, however, do not support that conclusion. To the contrary, the records indicate that Plaintiff's neurologists frequently changed Plaintiff's headache medications and/or dosages for various reasons, including negative side effects, ineffectiveness, and/or lack of insurance coverage. See Exs. 4F, 7F, 14F, 20F, 24F.

> a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7p. Although Plaintiff's complaints and her neurologists' treatment notes certainly do not require a finding of disability, the ALJ's failure to meaningfully discuss those records prohibits me from determining whether the ALJ considered and discredited those records or simply ignored them.

In addition, the ALJ attempted to discredit Plaintiff's claim that she was unable to work by stating that her self-reported activities of daily living were "inconsistent with an individual experiencing symptoms to the degree alleged." (R. 19). These activities of daily living included: caring for her personal needs independently; caring for her young daughter; watching movies; performing various household chores, such as preparing simple meals, light cleaning, doing laundry, shopping, and driving. Id. In discussing these activities of daily living, however, the ALJ "failed to mention the rigor or frequency of these activities as performed by Plaintiff." Tomassi v. Colvin, No. 2:12-cv-01354, 2013 WL 5308021, at *15 (W.D. Pa. Sept. 20, 2013). In particular, the ALJ failed to discuss Plaintiff's testimony that: she could not work a steady eight-hour workday, or even a varied workday with a schedule, because she never knows when she will have a migraine; she averages 2-3 migraines a week; when she has a severe migraine, "nothing gets done"; and she is not really able to function with a migraine and often has to call someone to help with her daughter while she lies down with an ice pack in a dark room for at least several hours. (R. 43-58). Thus, I am unable to determine whether (and, if so, why) he chose to

discredit that testimony in making his RFC finding. The VE testified that there would not be any jobs available for an individual who would be off task no less than 10 percent of each workday (or more than six minutes per hour), or, in the alternative, would be absent more than one full day per month. (R. 60). Moreover, it is well-established that "sporadic or transitory activity does not disprove disability." Smith v. Califano, 637 F.2d 968, 971-72 (3d Cir. 1981); see also Kangas v. Bowen, 823 F.2d 775, 777-78 (3d Cir. 1987) (stressing that the regulations defining RFC require the Secretary to determine a claimant's capacity for work on a "regular and continuing" basis (citing 20 C.F.R. § 404.1545(b))).

The ALJ's failure to address Plaintiff's testimony regarding her headache-related limitations; her history of seeking medical treatment for her headaches; and her persistent attempts to obtain relief through various medications mandates a remand with instructions to the ALJ to consider this evidence in making his RFC determination. If the ALJ chooses to discredit any of this evidence and/or Plaintiff's testimony concerning the same, he must set forth the reasons for doing so in order to allow for meaningful judicial review.

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that the ALJ's decision is not supported by substantial evidence because, in discussing his RFC and credibility findings, the ALJ failed to adequately address Plaintiff's testimony regarding her headache-related limitations; her history of seeking medical treatment for her headaches; and her persistent attempts to obtain relief through various medications. The case therefore is remanded for further consideration in light of this Opinion.

For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLA RENEE TODARO,

    Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Civil Action No. 14-744

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 24th day of February, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 10) is GRANTED to the extent that Plaintiff seeks remand for further consideration, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 12) is DENIED.

    BY THE COURT:

    /s/ Donetta W. Ambrose
    Donetta W. Ambrose
    U.S. Senior District Judge